CITY OF COLUMBUS, APPELLANT, *v.* TAYLOR, APPELLEE.

[Cite as Columbus *v.* Taylor (1988), 39 Ohio St. 3d 162.]

(No. 87-1151—Submitted April 5, 1988—Decided October 26, 1988.)

*Ronald J. O'Brien,* city attorney, *Lisa L. Sadler, Dana M. Peters* and *Maria Juskiw,* for appellant.

*Max Kravitz, Jon Gonzales* and *Steve Nolder,* for appellee.

LOCHER, J. The primary issue presented in this action is whether appellee's conviction for violating Section 2133.01(b)(2) of the Columbus City Code was proper. We hold that he was properly convicted and, accordingly, reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

By final judgment entry of the trial court, appellee was convicted and sentenced for violating Section 2133.01 (b)(2).[2] Under this *per se* offense, the prosecution in order to sustain a conviction must prove beyond a reasonable doubt that the defendant was operating a vehicle within the city and that at the time of operation had a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath.[3] See, *e.g., State* v. *Boyd* (1985), 18 Ohio St. 3d 30, 18 OBR 68, 479 N.E. 2d 850. It is well-established that a defendant may challenge the accuracy of *his specific* test results. *State* v. *Tanner* (1984), 15 Ohio St. 3d 1, 15 OBR 1, 472 N.E. 2d 689. See, also, *State* v. *Vega* (1984), 12 Ohio St. 3d 185, 12 OBR 251, 465 N.E. 2d 1303. In the cause *sub judice,* appellee's test on the BAC Verifier registered a reading of .118, which is beyond the legal limit established by the General Assembly and by the Columbus City Council.

The main issue upon which the court of appeals based its judgment of reversal concerned the exclusion of the report and testimony of an expert and his simulated testing of appellee on a BAC Verifier machine. This simulated testing took place approximately three months after the incident in question.[4] The trial court initially excluded the testimony and report of the expert due to appellee's failure to provide the prosecution with a timely copy of the expert's report. However, the trial court later modified that ruling and excluded the testimony concerning the simulated testing on grounds of irrelevance and possible misleading effect.

Evid. R. 402 provides:

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.

---

[2] Section 2133.01(f) of the Columbus City Code provides:

"A person may be charged and tried to verdict for violation of both subsection (a) and subsection (b) based on the same conduct or incident, but sentence may not be imposed for violation of both subsection (a) and subsection (b) based upon the same conduct or incident."

[3] Section 2133.01(b)(2) corresponds to R.C. 4511.19(A)(3), which provides in relevant part:

"No person shall operate any vehicle, streetcar, or trackless trolley in this state, if any of the following apply:

"* * *

"(3) The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath[.]"

[4] The testing took place on April 3, 1986.

Evidence which is not relevant is not admissible."

Evid. R. 702 specifically refers to admissibility of scientific testimony:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise."

In a case decided before the adoption of the Evidence Rules, this court held:

"1. Evidence of experiments performed out of court, tending to prove or disprove a contention in issue, is admissible if there is a substantial similarity between conditions existing when the experiments are made and those existing at the time of the occurrence in dispute; dissimilarities, when not so marked as to confuse and mislead the jury, go to the weight rather than the admissibility of the evidence.

"2. The admission or rejection of evidence as to such experiments is a matter *peculiarly* within the discretion of the trial judge, and when such discretion has not been palpably abused reviewing courts will not interfere." (Emphasis added.) *St. Paul Fire & Marine Ins. Co.* v. *Baltimore & Ohio RR. Co.* (1935), 129 Ohio St. 401, 2 O.O. 396, 195 N.E. 861, paragraphs one and two of the syllabus.

It is axiomatic that a determination as to the admissibility of evidence is a matter within the sound discretion of the trial court. See *Calderon* v. *Sharkey* (1982), 70 Ohio St. 2d 218, 24 O.O. 3d 322, 436 N.E. 2d 1008. The issue of whether testimony is relevant or irrelevant, confusing or misleading, is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury. Although Evid. R. 702 expressly allows for the admission of scientific testimony, it does not mandate such admission.

In the instant case, the trial court determined that the conditions affecting appellee's breath-alcohol content on the morning of January 12, 1986, could not be reliably duplicated by the simulated testing and that any such evidence would mislead the jury and be unfairly prejudicial. We do not disagree with this determination. It is clear that a number of factors or conditions can influence the human body and the effects of alcohol within it. See, generally, Erwin, Defense of Drunk Driving Cases (3 Ed. 1988). These factors or conditions can affect the test results at any time. Furthermore, the conditions on the night in question were duplicated for the test solely on the basis of appellee's recollection. Also, it was argued that a great deal of the testing may have occurred without the expert's direct supervision.

Additionally, we find it particularly significant that the expert witness was permitted to testify as to other matters within his expertise concerning the BAC Verifier test. The expert was not entirely precluded from testifying. Included in his testimony was his analysis of the effects of burping or belching on a BAC Verifier reading. Appellee had testified earlier in the trial that his stomach was "acting up" and that he was burping on the night of the test. In the excluded simulated test report the expert found that the "* * * influence of Mr. Taylor's burping and belching would have a very pronounced elevating effect on the measured BAC reading." The report concludes that "* * * the particular BAC test result * * * is highly questionable based upon the influence of the contamination of the stomach contents due to the burping and belching." We fail to see how appellee was prejudiced by the exclusion of the expert's report. The combined effect of ap-

pellee's testimony concerning his upset stomach and the expert's testimony as to the effects of burping and belching on the BAC Verifier presented essentially the same facts to the jury on the question of appellee's specific test result as the excluded report would have presented.

In any event, the question before us is not whether the trial court ruled as we would have ruled if we had been confronted with such evidence, but whether the trial court abused its discretion so as to prejudice appellee. We follow our decision in *St. Paul Fire & Marine Ins. Co., supra,* and hold that the admission or rejection of evidence concerning out-of-court experiments is a matter peculiarly within the discretion of the trial court, and that reviewing courts will not interfere absent an abuse of discretion. It is well-established in the law of this state that a trial court must have made a decision implying an attitude that was unreasonable, arbitrary, or unconscionable to constitute an abuse of discretion. *Ojalvo* v. *Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St. 3d 230, 232, 12 OBR 313, 315, 466 N.E. 2d 875, 877.

Upon a thorough examination of the record in this case, we cannot find that the trial court committed an abuse of discretion in excluding the expert's report and testimony concerning the simulated test. Therefore, we reverse the judgment of the court of appeals on the issue of the exclusion of the report and expert testimony concerning such report.

The court of appeals also reversed the judgment of the trial court on two other issues: (1) the trial court erred by permitting the prosecution to impeach appellee with the use of a statement previously excluded by the court; and (2) the trial court erred by refusing to instruct the jury on the issue of "unavoidable accident." We find that the court of appeals erroneously reversed the judgment of the trial court based on these two issues. While these possible errors may have relevance to appellee's being found guilty of the "impaired" charge under Section 2133.01(a), that verdict was not part of the trial court's final judgment.

Appellee was sentenced for violating Section 2133.01(b)(2) of the Columbus City Code. Appellee was not sentenced for violating Section 2133.01(a). "In a criminal case, there must be a judgment or final order before there is a basis for appeal." *State, ex rel. Leis,* v. *Outcalt* (1982), 1 Ohio St. 3d 147, 149, 1 OBR 181, 184, 438 N.E. 2d 443, 447. " 'Final judgment in a criminal case means sentence. The sentence is the judgment.' " *State* v. *Chamberlain* (1964), 177 Ohio St. 104, 106, 29 O.O. 2d 268, 269, 202 N.E. 2d 695, 696, quoting *Berman* v. *United States* (1937), 302 U.S. 211, 212. "* * * [I]n a criminal case there must be a sentence which constitutes a judgment * * * before there is a basis for appeal." *Chamberlain, supra,* at 106-107, 29 O.O. 2d at 269, 202 N.E. 2d at 696. See, also, *State* v. *Hunt* (1976), 47 Ohio St. 2d 170, 174, 1 O.O. 3d 99, 101, 351 N.E. 2d 106, 109.

We find that neither of these issues presents "errors" which would constitute a reversal of appellee's conviction for violating Section 2133.01 (b)(2). Prior to trial, the trial court sustained appellee's motion to suppress statements made by him after he was placed in the police cruiser. The police officers searched appellee's car and found a jacket. Appellee was asked about the jacket while in the cruiser and he told the police that he found it at the bar. In an effort to impeach appellee's credibility at trial, the prosecution inquired about the jacket testimony and stated: "So you're acting in a way that you usually don't act. You

took a jacket that wasn't yours." Appellee had not testified as to the subject of the suppressed evidence on direct examination, and the direct examination did not reasonably suggest the suppressed evidence.

Evidence tending to show a defendant has committed other crimes wholly independent of the offense for which he is on trial is generally inadmissible. However, "[e]rror in the admission of other act testimony is harmless when there is no reasonable possibility that the testimony contributed to the accused's conviction." *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 2 O.O. 3d 495, 358 N.E. 2d 623, paragraph three of the syllabus. We hold that any error in the admission of the "jacket" testimony in the instant case was harmless. There is no reasonable possibility that such testimony contributed to appellee's conviction for violating Section 2133.01(b)(2). Appellant proved beyond a reasonable doubt that appellee was operating a vehicle in the city of Columbus and at the time of operation had a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath. Evidence of any other actions by appellee is irrelevant and could have no bearing on this conviction.

Likewise, we also conclude that any omission of a jury instruction concerning an "unavoidable accident," whether error or not, could have no prejudicial effect on appellee's conviction for the *per se* offense.

Based on the foregoing, we hold that appellee was properly convicted in this matter. Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

*Judgment reversed.*

MOYER, C.J., HOLMES and WRIGHT, JJ., concur.

DOUGLAS, J., concurs separately.

SWEENEY and H. BROWN, JJ., dissent.

DOUGLAS, J., concurring. I concur. As indicated in the majority opinion, the charge of operating under the influence, when brought pursuant to R.C. 4511.19(A)(3) or Section 2133.01(b)(2) of the Columbus City Code, is a charge based upon specific conditions existing at or within a specific time period. As such, when the prescribed conditions exist, a *per se* violation has occurred. The only evidence relevant to attacking the validity of the test results is evidence which would show that the test was not properly conducted, the health department regulations were not followed, the machine was not properly calibrated or the operator was not qualified to administer the test. Evidence as to a defendant's body weight, amount of liquor consumed, "burn off" rate, length of period of consumption, general state of health, etc., is not evidence relevant to a *per se* violation.

H. BROWN, J., dissenting. Because I believe that the trial court erred in its refusal to consider the simulated testing of appellee on a BAC Verifier machine, I dissent.

To sustain a conviction under Section 2133.01(b)(2) of the Columbus City Code, a *per se* offense, the prosecution must prove beyond a reasonable doubt that: (1) the accused was operating a vehicle within the city and (2) at the time of operation the accused had a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of breath. *State* v. *Boyd* (1985), 18 Ohio St. 3d 30, 18 OBR 68, 479 N.E. 2d 850. The evidence is limited to that relevant to one or both of the above elements. *Id.* at 31, 18 OBR at 69, 479 N.E. 2d at 851.

Thus, an attack may not be made against the *general* reliability of the BAC Verifier to rebut the presumption created by the statute that the defendant was under the influence of alcohol. See *State* v. *Vega* (1984), 12 Ohio St. 3d 185, 12 OBR 251, 465 N.E. 2d 1303. A defendant may, however, challenge the accuracy of *his specific* test results. *State* v. *Tanner* (1984), 15 Ohio St. 3d 1, 15 OBR 1, 472 N.E. 2d 689. A defendant may, for example, introduce the results of an additional chemical test, as provided for in R.C. 4511.19(B). See *Vega, supra,* at 189, 12 OBR at 255, 465 N.E. 2d at 1307. The purpose of such evidence would be to demonstrate, through a qualified expert, that the amount of alcohol consumed should not have resulted in a BAC level above .10.

In the case before us, the appellee attempted to introduce evidence concerning a simulated test conducted by an expert on a BAC Verifier machine. The simulated test was designed to recreate the drinking pattern of the appellee on the night of the arrest in order to show what his BAC should have been at the time of arrest. When the trial court expressed reservations about the reliability of the test, appellee's counsel requested that the court *voir dire* the witness concerning the test's scientific validity before ruling on its admissibility. Instead, the court excluded the evidence based upon the prosecution's argument that it was impossible to *exactly duplicate* the circumstances of the offense.

Exact duplication of conditions existing when the experiment is made and those existing at the time of the occurrence in question is not a precondition to admissibility.

"Evidence of experiments performed out of court, tending to prove or disprove a contention in issue, is admissible if there is a *substantial similarity* between conditions existing when the experiments are made and those existing at the time of the occurrence in dispute; *dissimilarities,* when not so marked as to confuse and mislead the jury, *go to the weight rather than the admissibility of the evidence."* (Emphasis added.) *St. Paul Fire & Marine Ins. Co.* v. *Baltimore & Ohio RR. Co.* (1935), 129 Ohio St. 401, 2 O.O. 396, 195 N.E. 861, paragraph one of the syllabus.

In the present case, the court excluded the experiment *without hearing any evidence* as to its scientific validity. The trial court should have conducted a review of evidence concerning the test's validity and the qualifications of the expert witness. Once these two determinations were made, the trial judge would have been in a position to make an informed ruling on the proffered experiment.

The admission or rejection of evidence of out-of-court experiments is within the sound discretion of the trial court. " '* * * [T]he exercise of such discretion will, upon appeal, be viewed somewhat more critically when such evidence is rejected than when it is received.' " *St. Paul Fire & Marine Ins. Co., supra,* at 406, 2 O.O. at 399, 195 N.E. at 864. Under this standard, which the majority endorses, the trial court's rejection of the evidence without a hearing was an abuse of discretion. See *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 16 O.O. 3d 169, 404 N.E. 2d 144. Since the proffered evidence appeared crucial to appellee's defense, the court's ruling effectively denied him the opportunity to present an adequate defense. Accordingly, I would affirm the judgment of the court of appeals.

SWEENEY, J., concurs in the foregoing dissenting opinion.