JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant Shawn Nelson ("defendant") appeals from his convictions and sentence for aggravated robbery with firearm specifications, unlawful possession of a dangerous ordnance, and having a weapon while under disability. For the reasons that follow, we reverse defendant's conviction for possession of a dangerous ordnance; affirm the judgment in all other respects and remand for resentencing.
 {¶ 2} Police arrested defendant in connection with the robbery of a store owner in Cleveland on August 30, 2001. On that date, the victim went to the bank at 11:00 in the morning to withdraw $10,000 and drove back to his store at 11:15 a.m. The bank placed the money in a brown bag.
 {¶ 3} In the store parking lot, the victim noticed a red car parked about 35 feet away. The victim saw the male passenger walk toward the door and then him. The man "flip[ped] out the gun" and pointed it at the victim and said "G * * * give me the bag." (Tr. 45). The victim handed his assailant the bag and kept looking at him.
 {¶ 4} The victim testified that he tried to focus and look at the assailant's face. The victim recalled that his assailant wore a blue work uniform. The assailant left in the red automobile with a driver. The victim then called 911 on his cellular phone. The victim reported the robbery and described the assailant as an African American who fled in a red Oldsmobile with temporary tags and gave the direction the vehicle left.
 {¶ 5} Police arrived at the store three to five minutes later and the victim again described the assailant, including his height and weight. The victim filed a police report the next day.
 {¶ 6} Later in the day, on August 30, 2001, police asked the victim to identify a possible suspect in person. Although the victim recognized the vehicle as the one involved in the incident, he indicated that the suspect was not his assailant.
 {¶ 7} On or around September 15, 2001, an officer brought photographs to the victim at his store for identification. The defendant's picture had a different background than the rest of the photographs in the array; however, the victim testified that this had no impact on his identification of defendant as the perpetrator.
 {¶ 8} The victim identified defendant as his assailant from the photo array. The victim testified that he picked the defendant from the photo array because he "can't forget his face. He [was] the one [that] point[ed] the gun at [him]." (Tr. 58). The detective did not make any suggestions to him when he looked at the photo array. The victim testified that he is "very sure" and certain that defendant was his assailant. The victim confirmed that prior to and throughout the incident he had several opportunities to observe the assailant.
 {¶ 9} The officer explained her procedure in conducting the photographic display as follows: "I explain I'm going to show them a photo spread of six individuals, all similar in characteristics, at which point I put the photo spread down at his counter and I said can you identify any of these males * * * that took part the day you were robbed." (Tr. 73). The officer confirmed that the victim readily identified the defendant as the perpetrator.
 {¶ 10} The defendant moved to suppress the identification procedure on the basis that defendant's photo had a different background than the other photos in the array. After conducting an evidentiary hearing, the court denied the motion. The defendant waived his right to a jury trial on the count of having a weapon while under disability. The court then bifurcated that count and the remaining counts proceeded to trial before a jury.
 {¶ 11} The jury convicted the defendant of aggravated robbery with firearm specifications and possession of a dangerous ordnance. Thereafter, the court found defendant guilty of having a weapon while under disability. The court imposed the following sentence: nine years for aggravated robbery, 17 months for unlawful possession of a dangerous ordnance, and four years for having a weapon while under disability, to run concurrently with each other but consecutive to the three year sentence for the firearm specification. Defendant appeals assigning ten errors for our review, which will be addressed together when appropriate.
 {¶ 12} "I. Defendant was denied due process of law when the court overruled defendant's motion to suppress the identification procedure based on an erroneous burden of proof."
 {¶ 13} A reviewing court is bound to accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. State v. Klein (1991),73 Ohio App.3d 486. However, the reviewing court must independently determine, as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623, 627.
 {¶ 14} The defendant bears the initial burden of establishing that the photographic identification procedure was unnecessarily suggestive. If the defendant meets this burden, the court must consider whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification. State v. Willis (1997), 120 Ohio App.3d 320, 324-325, citing Manson v. Brathwaite (1977), 432 U.S. 98, 114, 53 L.Ed.2d 140,97 S.Ct. 2243; State v. Garner (1995), 74 Ohio St.3d 49, 61.
 {¶ 15} The court must determine whether the photographic identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."Simmons v. United States (1968), 390 [* * * 6] U.S. 377, 384,19 L.Ed.2d 1247, 88 S.Ct. 967.
 {¶ 16} The Supreme Court instructs courts to consider the following factors with regard to potential misidentification: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation * * *." Neil v. Biggers (1972), 409 U.S. 188,199-200. The court must review these factors under the totality of the circumstances. Id. And, "although the identification procedure may have contained notable flaws, this factor does not, per se, preclude the admissibility of the identification." See State v. Browner (May 31, 2001), Scioto App. No. 99CA2688, citing State v. Merrill (1984),22 Ohio App.3d 119, 121; State v. Moody (1978) 55 Ohio St.2d 64, 67. In this case, the photo array consisted of six pictures. All of the pictures had a white background except the picture of defendant, which had an apartment building in the background. On this basis, defendant claimed that the photo array was unduly suggestive. However, the victim repeatedly confirmed his certainty that he made a correct identification. The victim further denied that the background had any impact on his identification. Indeed, when defense counsel cross-examined the victim as to any differences he noticed in the defendant's picture, he began detailing differences in the defendant's features. We also note that the victim refused to identify another suspect as his assailant on the day in question despite the fact that he recognized the vehicle at the scene of the show-up identification to be the same vehicle that he observed during the commission of the offense.
 {¶ 17} In denying the motion to suppress, the court stated the following: "it would take some kind of expert witness to tell me that the background is an important factor here, and I don't have the basis for deciding that. So I think that the defense has not sustained its burden of proof in arguing that this is unreasonably suggestive." (Tr. 88). The court did not improperly shift the burden of proof to defendant in this matter because defendant does bear the initial burden of establishing that the array was unnecessarily suggestive. Ibid.
 {¶ 18} Under these circumstances, we find that the photo array was not "unnecssarily suggestive" on the sole fact of the different backgrounds and that the victim's identification of the defendant was reliable. At least one other Ohio court has addressed the issue of different backgrounds and also concluded that this did not make the photo array "unnecessarily suggestive." Browner, supra. ("the fact that [defendant's] photo was the only one with a white background did not make the presentation impermissibly suggestive because there is no evidence that the officer showing the array attached any special significance to the background color or steered the viewers of the array toward an identification of [defendant] solely on the basis of the background"). Accordingly, the trial court did not err in denying defendant's motion to suppress.
 {¶ 19} Assignment of Error I is overruled.
 {¶ 20} "II. Defendant was denied a fair trial when evidence concerning defendant's alleged criminal history was put before the jury.
 {¶ 21} "III. Defendant was denied a fair trial when evidence concerning the investigation by the police was offered."
 {¶ 22} A trial court's decision to exclude evidence is not grounds for reversal unless the record clearly demonstrates that the trial court abused its discretion and that the complaining party has suffered a material prejudice. Columbus v. Taylor (1988), 39 Ohio St.3d 162, 164. An abuse of discretion connotes more than an error of law or judgment, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Tracy v. Merrell-Dow Pharmaceuticals, Inc. (1991),58 Ohio St.3d 147, 152.
 {¶ 23} With respect to both of these assigned errors, the trial court sustained the defense's objections. During direct examination, an officer testified that based on a tip from Crime Stoppers, she obtained photographs and that defendant's photograph was taken during his arrest in connection with a Garfield Heights warrant. In both instances, the defense objected, the court sustained the objections and instructed the jury to disregard the testimony. (Tr. 502-503). In addition, defendant complains that this same witness improperly implied that a non-testifying party made an identification. However, the witness did not indicate who the non-testifying party identified. Again, the defense objected to this particular testimony, the court sustained the objection, and gave a curative instruction. (Tr. 506-508). Consequently, the court did not admit any of this evidence and furthermore instructed the jury to disregard it.
 {¶ 24} Defendant asserts that the curative instructions failed to cure the prejudicial impact of the statements. We disagree. "A jury is presumed to follow the instructions given to it by the trial judge." Statev. Loza (1994), 71 Ohio St.3d 61, 75, [citation omitted]. We find that any potential prejudice of the identified statements was cured by the court's instructions to the jury to disregard same.
 {¶ 25} Assignments of Error II and III are overruled.
 {¶ 26} "IV. Defendant was denied due process when the court cited facts to the jury in such a manner that it wanted the jury to believe the facts, as recited in the opening statement, showed defendant was guilty."
 {¶ 27} "In a voir dire examination of veniremen to qualify them as fair and impartial jurors under the constitution and the law, such examination, where not specifically controlled by statute, is largely in the discretion of the trial judge, and no prejudicial error can be assigned in connection with such examination unless there be a clear abuse of such discretion." State v. Ellis (1918), 98 Ohio St. 21, paragraph one of the syllabus. An abuse of discretion connotes more than an error of law or judgment, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Ibid. Defendant asserts that certain remarks by the court during voir dire violated due process of law. Specifically, defendant complains about the portion of the jury voir dire where the court hypothesized about the State's possible opening statement. The court used this hypothetical to illustrate to the jurors that the attorney's statements are not evidence. Defendant contends that the court wanted the jury to believe the facts of the hypothetical. We disagree. After giving the hypothetical, the court emphasized the need for the jury to decide the case based upon the evidence and the instructions given by the court at the close of evidence and not on what the lawyers "think the evidence is going to be." (Tr. 124). We do not find that the identified comments of the court rise to an abuse of the court's discretion in conducting jury voir dire.
 {¶ 28} Assignment of Error IV is overruled.
 {¶ 29} "V. Defendant was denied due process of law when he was sentenced for a felony of the third degree for having a weapon while under disability."
 {¶ 30} R.C. 2923.13 provides, in pertinent part, as follows:
 {¶ 31} "(A) Unless relieved from disability as provided in section2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
 {¶ 32} "* * *
 {¶ 33} "(2) The person is under indictment for or has been convicted of any felony offense of violence * * *
 {¶ 34} "(B) No person who has been convicted of a felony of the first or second degree shall violate division (A) of this section within five years of the date of the person's release from imprisonment or from post-release control that is imposed for the commission of a felony of the first or second degree."
 {¶ 35} Crim.R. 7(B) sets forth the nature and contents of indictments and provides, in part, that the "[t]he indictment shall * * * contain a statement that the defendant has committed a public offense specified in the indictment. * * * The statement may be in the words of the applicable section of the statute, * * * or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged."
 {¶ 36} Count four of the indictment charges defendant with having a weapon while under disability in violation of R.C. 2921.13 and further finds that "defendant(s), unlawfully, and knowingly acquired, had, carried, or used a firearm or dangerous ordnance while being under indictment for or been convicted of a felony of violence, to-wit: the said [defendant], with counsel on or about the 6th day of May, 1992, in the Court of Common Pleas of Cuyahoga County, Ohio, Case No. CR 274728, having been convicted of the crime of Aggravated Burglary, in violation of Revised Code R.C. 2911.11 of the State of Ohio." (R. 1).
 {¶ 37} Defendant waived his right to jury trial on this count. Defendant further stipulated to the prior conviction referenced within the body of count four of the indictment. The State asserts that the statement sufficiently complied with Crim.R. 7 so as to give defendant notice that count four constituted a felony of the third degree as charged. We agree.
 {¶ 38} Assignment of Error V is overruled.
 {¶ 39} "VI. Defendant was denied due process of law when the court usurped a jury function by assuming the existence of various elements of the offenses.
 {¶ 40} "VIII. Defendant was denied due process of law when the court did not fully inform the jury of all the elements of aggravated robbery."
 {¶ 41} Both of these assigned errors allege error in the court's instructions to the jury. Because defendant failed to object to the jury instructions, we review the failure to give the identified instruction for plain error. The standard for plain error is "but for the error, the outcome of the trial clearly would have been otherwise." McKee,91 Ohio St.3d at 294, citing Crim.R. 52(B); State v. Johnson (2000),88 Ohio St.3d 95. "Failure of a trial court to separately and specifically instruct the jury on every essential element of each crime with which an accused is charged does not per se constitute plain error under Crim.R. 52(B)." State v. Adams (1980), 62 Ohio St.2d 151, paragraph two of the syllabus. "Where a trial court's failure to separately and specifically instruct the jury on every essential element of each crime with which an accused is charged is asserted to be plain error under Crim.R. 52(B), the reviewing court must examine the record in order to determine whether that failure may have resulted in a manifest miscarriage of justice. State v. Long, 53 Ohio St.2d 91, paragraph three of the syllabus, [* * * 3] approved and followed.)" Id., at paragraph three of the syllabus.
 {¶ 42} With regard to Assignment of Error VI, the identified portion of the jury instruction did not constitute plain error. The court specifically instructed the jury on the elements of the crimes charged. The court instructed the jury that it could not find defendant guilty of aggravated robbery unless it found all of the essential elements. While defendant maintains that the court omitted certain elements from the jury instruction on aggravated robbery, we do not find this amounted to plain error. In particular, defendant claims that the court failed to identify against whom the robbery was committed and that the jury must find that defendant had a weapon under his control. However, the court included as part of its instruction the following:
 {¶ 43} "You should find [defendant] guilty of aggravated robbery * * * if the State has proved beyond a reasonable doubt that * * * [defendant] had on his person a deadly weapon while committing theft offense and that in the course of that conduct he displayed it." (Tr. 637).
 {¶ 44} Even if the court had referred to the victim in its instruction on aggravated robbery, the outcome of the trial would not have been clearly different. The undisputed evidence established the identity of the victim of the aggravated robbery and that person testified at trial. There is no evidence in the record challenging the identity of the victim.
 {¶ 45} Assignments of Error VI and VIII are overruled.
 {¶ 46} "VII. Defendant was denied due process of law when he was convicted and sentenced for possession of a dangerous ordnance."
 {¶ 47} R.C. 2923.17 provides, in pertinent part, as follows:
 {¶ 48} "(A) No person shall knowingly acquire, have, carry, or use any dangerous ordnance."
 {¶ 49} Count three of the indictment charged defendant with unlawful possession of dangerous ordnance to-wit: "sawed-off shotgun." R.C. 2923.11(F) defines a "sawed-off firearm" as "a shotgun with a barrel less than eighteen inches long, or a rifle with a barrel less than sixteen inches long, or a shotgun or rifle less than twenty-six inches long overall." The State bore the burden of establishing these elements beyond a reasonable doubt. See, generally, State v. Jordan (2000),89 Ohio St.3d 488, 495 (finding that where a defendant was discovered while in possession of a shotgun and the State had introduced experts to testify about the measurements of the weapon, that was sufficient to prove the elements of possession of a dangerous ordnance).
 {¶ 50} The court instructed as follows: "I'm going to simply say to you that a dangerous ordnance includes a sawed-off firearm. So if this is a firearm that is sawed-off, that is a dangerous ordnance." In this case, the court failed to instruct the jury on the definition of "sawed-off firearm." There is no evidence in the record that established the measurements of the firearm. Under similar circumstances, this Court has reversed a conviction for possession of dangerous ordnance. State v.Shaw (Jan. 26, 1989), Cuyahoga App. No. 54978 (finding that "the failure to properly define the elements of the offense of possessing dangerous ordnance prohibited the jury from considering whether the appellant had in fact possessed a dangerous ordnance").
 {¶ 51} Assignment of Error VII is well taken and is sustained.
 {¶ 52} "IX. Defendant was denied effective assistance of counsel."
 {¶ 53} It is well-settled that in order to establish a claim of ineffective assistance of counsel, defendant must show two components: (1) "`that counsel's performance was deficient'"; and (2) "`the defendant must show that the deficient performance prejudiced the defense.'" Statev. Kole (2001), 92 Ohio St.3d 303, 306, quoting Strickland v. Washington
(1984), 466 U.S. 668, 687. However, appellate review of counsel's performance "must be highly deferential." Id.
 {¶ 54} This Court has previously acknowledged that "[i]n order to show that his lawyers' conduct was unreasonable, he must overcome the presumption that they provided competent representation, and show that their actions were not trial strategies prompted by `reasonable professional judgment.'" State v. Freeman (Dec. 14, 2000), Cuyahoga App. No. 76906, unreported, citing Strickland, supra.
 {¶ 55} The record does not support defendant's contention that his attorney rendered ineffective assistance by not filing a motion to suppress the photograph obtained after defendant was arrested in his home on a warrant from Garfield Heights. Defendant does not assert that the officers searched the premises and/or seized any evidence from the defendant's home.
 {¶ 56} The record establishes that defendant's picture was taken after he was arrested in connection with a warrant from Garfield Heights. Thus, there is no basis to suppress the photograph taken as a result of that lawful arrest.
 {¶ 57} Assignment of Error IX is overruled.
 {¶ 58} "X. Defendant was denied due process of law when the court sentenced defendant to nine (9) years for the aggravated robbery conviction."
 {¶ 59} R.C. 2929.11 provides:
 {¶ 60} "A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. "(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."
 {¶ 61} Defendant asserts that the sentence imposed by the court was not "consistent with sentences imposed for similar crimes committed by similar offenders." Having reviewed the court's extensive comments and considerations in imposing this sentence, we find that the court's sentence properly adhered to the overriding purposes of felony sentencing as delineated in the above statute. Furthermore, the record is devoid of any indication that defendant's sentence is inconsistent with sentences imposed on similar offenders who have committed similar crimes.
 {¶ 62} Assignment of Error X is overruled.
 {¶ 63} The judgment of the trial court is affirmed in part; reversed as to defendant's conviction for the offense of possessing dangerous ordnance, and remanded for resentencing consistent with this opinion.
It is ordered that appellant and appellee shall each pay their respective costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, P.J., and SEAN C. GALLAGHER, J., concur.