THE STATE OF OHIO, APPELLANT, *v.* SCHUCK, APPELLEE.

THE STATE OF OHIO, APPELLANT, *v.* PHELPS, APPELLEE.

[Cite as State *v.* Schuck (1986), 22 Ohio St. 3d 296.]

(Nos. 85-902 and 85-1015—Decided March 19, 1986.)

*Ronald L. Rehm,* for appellant.

*Kauffman, Eberhart, Cicconetti & Kennedy Co., L.P.A.,* and *Edward K. Eberhart,* for appellees.

CLIFFORD F. BROWN, J.  The sole question presented by these appeals is whether defendants' convictions are against the manifest weight of the evidence by virtue of the fact that their respective intoxilyzer results may not have proved a breath alcohol concentration above .10 percent, according to the design specifications contained in the general manual for intoxilyzers published by the Ohio Department of Health. For the following reasons, we hold that the convictions were in fact supported by the evidence, and therefore we reverse the holdings of the court of appeals and reinstate defendants' convictions.

In vacating defendants' convictions, the court below essentially held that the intoxilyzer is only as accurate as the limits stated in its design specifications, and that the margin for error described therein was such that the test results for both defendants could not constitute sufficient evidence of prohibited alcohol concentration. The state argues that this holding fails to recognize the crucial fact that design specifications are only an *estimate* of *possible* error. The exact level of accuracy of a particular intoxilyzer at a particular time is readily verifiable by reference to calibration checks. These checks are regularly conducted for every intoxilyzer. They involve testing a solution, the alcohol concentration of which is already known to the tester. The reading given by the intoxilyzer from this solution is then compared to the actual known alcohol concentration. The range of accuracy is thereby established.

We agree with the state's contention that, in analyzing the accuracy of a particular intoxilyzer reading, a court may not rely solely on the intoxilyzer's design specifications where data from calibration checks have been properly submitted. In holding that the intoxilyzer results were not necessarily precise enough to sustain a conviction, the court below relied on the least reliable measure of accuracy. The design specifications are simply a maximum range of error for intoxilyzers generally. The actual accuracy of a given intoxilyzer is determined only by calibration checks. These checks are the truest measure of accuracy of a particular intoxilyzer at a particular time. Where this range of accuracy, compared against a particular reading, is such that an actual alcohol concentration level of .10 percent or more is assured, the intoxilyzer reading is relevant, admissible, and sufficient to sustain a conviction when coupled with evidence of operation of a motor vehicle. See *State* v. *Boyd* (1985), 18 Ohio St. 3d 30, syllabus.

In defendant Schuck's  case, the parties stipulated the following facts to the trial court. Defendant was operating a vehicle on October 1, 1983. Defendant's intoxilyzer test resulted in a reading of .107 percent. The intoxilyzer used for defendant's test had been calibrated on September 30,

1983, and again on October 7, 1983. The earlier check showed a margin for error of plus .002 percent; the later check reflected an accuracy level of plus .003 percent. Thus, defendant Schuck's intoxilyzer reading of .107 percent showed an actual alcohol concentration of, at best, .104 percent.

In defendant Phelps' case, the parties stipulated that defendant was operating a motor vehicle on August 12, 1984. His intoxilyzer reading on that date was .105 percent. The intoxilyzer had been calibrated on August 5, and again on August 12, 1984. The August 5 calibration check showed a reading of .103 percent from a solution known to contain a level of .105 percent, reflecting a margin for error of minus .002 percent. The later check reflected a margin for error of minus .003 percent. Thus, defendant Phelps' reading of .105 percent showed an actual concentration of .107 percent at best.

Both defendants' levels were well above the statutory limit of .10 percent. This evidence, coupled with the evidence of operation of a motor vehicle, is sufficient to sustain a conviction under R.C. 4511.19(A)(3). See *Boyd, supra,* at syllabus.

Accordingly, the judgments of the court of appeals are hereby reversed, and the defendants' convictions are reinstated.

*Judgments reversed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS and WRIGHT, JJ., concur.